Good morning and may it please the court. My name is Tiffany Yim and I'm a certified law student from the University of California Irvine School of Law. My partner's name is Eric Halverson and we are under the supervision of Professor Paul Hoffman. With the court's permission, we would like to reserve three minutes of our time for rebuttal. Yes, and what's your clock? It counts down. I will begin by discussing the district court's decision to deny injunctive and declaratory relief on Mr. Aydelotte's First Amendment retaliation claim. The district court's decision to deny municipal liability and the district court's decision to grant qualified immunity on Mr. Aydelotte's First Amendment damages claims. Mr. Halverson will then discuss the district court's decision regarding Mr. Aydelotte's fines and the dismissal of unserved defendants. Mr. Aydelotte is a long-standing resident of the town of Skykomish. He who has been retaliated against for the lawful exercise of his First Amendment rights. Mr. Aydelotte is currently and always has been a whistleblower, committed to challenging corruption in the town and holding public officials accountable for their misdeeds. The town is a very small, less than 200 people, where everyone knows and has heard of Mr. Aydelotte and his commitment to justice. In fact, based on the results of a petition to disclose finances that Mr. Aydelotte had submitted to the Washington Public Disclosure Commission in 2006, in 2011, the Washington Superior Court held that numerous town officials had indeed violated the municipal officer's Code of Ethics. As a result of this and other efforts by Mr. Aydelotte to uproot corruption in the town, he has been repeatedly retaliated against. Put briefly, Mr. Aydelotte's dinghy and garage were destroyed following his decision to file a complaint to the Washington Public Disclosure Commission. His fence was destroyed and his property was trespassed upon following his request for disclosure of Mayor Grider's finances and connections to the BNSF Railway, and he had his First Amendment rights violated by being forced to remove lawful political signs from display on his property. Despite this, the District Court granted summary judgment in favor of the defendants. Summary judgment was improper as to Mr. Aydelotte's First Amendment retaliation claim because the District Court failed to address Mr. Aydelotte's requests for injunctive and declaratory relief. Mr. Aydelotte, at that time, was a pro se plaintiff and the court should have construed his complaint liberally. In his complaint, he clearly requests for injunctive relief to be free from retaliation, from harassment, and from having his property trespassed upon. Similarly, he clearly seeks declaratory relief, requesting that the employees of the town be held responsible for the harm they have caused him. Furthermore, this court has routinely held that qualified immunity is not a defense to injunctive or declaratory relief. Therefore, Mr. Aydelotte's claims for injunctive and declaratory relief were clearly not addressed in the District Court's analysis of qualified immunity. Therefore, this court should reverse the District Court's grant of summary judgment as to Mr. Aydelotte's request for injunctive and declaratory relief. Next, based on the evidence adduced, a reasonable fact finder could hold in Mr. Aydelotte's favor that the town of Skykomish is liable for violating his right to be free from retaliation for the exercise of his First Amendment rights. Municipal liability for a constitutional violation can be established in three ways. First, by an expressly adopted policy. Second, by a long-standing practice or custom. And third, by the decision of a person with final policy-making authority. In this case, Mr. Aydelotte has clearly established that the town of Skykomish has a long-standing custom of retaliating against him and committing First Amendment violations. Under this court's decision in Webb v. Sloan, the question of whether a policy or custom exists is a jury question. Here, Mr. Aydelotte adduced sufficient evidence of retaliation for the exercise of his First Amendment rights, spanning over the course of over 10 years. So what was the first exercise of his First Amendment rights that we're talking about? Was it the request to Mayor Grider for his financial records? No. In this case, for my no liability, we are looking at a broader timeline, including the previous mayor. So we would go all the way back to, say, 2006 and before even when he was making requests in the petition to the Washington Public Disclosure Commission. So even beginning all the way back then, up until now. And when was that? The petition was filed in 2006. 2006? Yes. Okay. So, as you can see, the instances of retaliation were committed not only during the most recent mayoral administration, but even prior. We're talking about a statute of limitations just kind of comes out. I mean, the first act of retaliation was what? The first one we are mentioning in this case is going to be when he had his, he was threatened at a town council meeting and he had his his garage and dinghy were destroyed after the public Washington Published Disclosure Commission petition. So he actually was successful in the beginning of uncovering some kickbacks or bribes between the railroad and the town? Yes, he was successful in finding the corruption in that case. The Washington Superior Court held in his favor. News of that and his whistleblower uncovering corruption ways was passed along through the town because it is a very small town, fewer than 200 people. His reputation precedes him. He has been a thorn in the side of the town since 2006 and everyone knows it. Therefore, there has been a decade-long campaign of retaliation against Mr. Adelotte committed by both the past and the current mayoral administrations. And so the court below granted summary judgment in qualified immunity and that's one of your issues, right? Yes. Okay. So and so what are you arguing that there's a genuine issue of disputed fact here that should have precluded summary judgment? Well, this is in regard to municipal liability. Okay, so now you're not talking about the mayor alone. You're talking about the town. Yes. Okay. With regard to the municipal liability, it doesn't appear that the mayor has the final policy-making authority. What's your theory there and how is that supported by the evidence in the record? So Mayor Greider was acting within his duties as mayor when he retaliated against Mr. Adelotte. Under Washington Code 35A 12100, that outlines the broad powers given to mayors under state law. It states, the mayor shall be the chief executive and administrative officer of the city in charge of all departments and employees. He or she shall see that all laws and ordinances are faithfully enforced and that the law and order is maintained in the city. Therefore, it is clear under state law that the mayor is given broad powers. I would like to remain cognizant of my partner's time. If you have any further questions, I can answer them on rebuttal. Thank you, counsel. Good morning. Good morning. May it please the court, Eric Halverson for Mr. Adelotte. With the court's permission, I'd like to start with the sign issue and then move on to the service issue. Okay. As part of Mr. Adelotte's continuing efforts to hold defendants accountable, he erected signs on his private property that detailed the ways he felt the current government was failing. For example, his signs accused defendants of caring more about the railroad than the children of Skykomish, reiterated his belief that the town should be unincorporated, and promised that he would not be silent on these issues moving forward. The defendants reacted the same way they had any other time. Mr. Adelotte asserted his constitutional right to speech. They attempted to silence him and pressure him to remove the signs. This issue presents the intersection of two of this country's most long-respected rights, the right to individual liberty in one's home and the right to engage in political speech, especially speech that criticizes the government. As the Supreme Court in LaDue v. Gillio stated, it is especially important to protect an individual's rights when the government seeks to constrain a person's ability to speak from their own home. However, the district court failed to protect Mr. Adelotte's rights and should be reversed by this court on this issue for two reasons. First, the district court erred in only considering Mr. Adelotte's claim regarding his signs as part of his First Amendment retaliation claim. While the defendants' efforts to regulate and control these signs was one example of official retaliation against Mr. Adelotte's speech, this issue also involves direct regulation of that speech and therefore also presents a independent and freestanding First Amendment claim. Mr. Adelotte requested equitable relief to prevent the defendants from continuing to constrain his right to speech. The court below failed to respond to these requests and never conducted the analysis of this freestanding First Amendment issue. As a result, this court should reverse. There's a case right now before the Supreme Court called Lozeman versus City of, I think it's Riviera Beach, and it's a First Amendment retaliation case involving an individual in the town who has been alleging a conspiracy, in a sense, by the town officials to go get him. Seems to me there are a lot of parallels between Lozeman and this case, and would it make sense for this court to wait to receive the decision in Lozeman? Maybe ask the parties for their views on Lozeman before rendering a final decision here. While that might, that might be appropriate on the First Amendment retaliation side of this particular claim, as I was just stating, there is a separate freestanding First Amendment. For the sign, the sign part of the case. Correct. Well, they're, they're related in a sense because it's the same action by the defendants, and we think that the, their, their efforts to constrain his ability to speak on these signs is one example of retaliation, but because it's such a direct regulation of his political speech, we think it also raises a very clear First Amendment claim that is separate that was not addressed by the District Court. But if we were to wait for the Lozeman decision, I just want to see what prejudice that would be to your client. Is there any reason why there has to be a decision in this case in the next three weeks for the Supreme Court, presumably to render its decision in Lozeman? I'm not aware of any, of any prejudice that would result from that, that three-week span. What I would say that Mr. Adelotte would be very interested in, in the very least, getting some sort of equitable relief to protect his ability to speak in the future. And one of the reasons this is important, and one of the other reasons that the, this Court should reverse, is because the analysis conducted by the District Court on that First Amendment retaliation claim was also flawed in the way that it relied on the town sign code being applicable to Mr. Adelotte's signs. The code expressly defined signs as those advertising the sale of goods or services, and therefore cannot be found to regulate Mr. Adelotte's political, non-commercial signs. Throughout this case, Mr. Adelotte has made it very clear that he wishes to engage in this type of speech he has in the past and wishes to continue to do so in the future. And it is very important for him to be able to do that. So I think that is the the most pressing request by Mr. Adelotte on his sign issue. So do you think we would, we could bifurcate the issues and hold some pending Lozman and bit rule on others? If this Court thinks that that's appropriate, especially in light of the, the dual nature of the sign code claim, I think it's, it's reasonable once again to consider the First Amendment claim separately. And then if there is a reason to hold the retaliation claim, I think that that could be appropriate. Yeah, and it should be only three weeks, but we don't know for sure. Always tough to say. I want to be cognizant of my time as well for rebuttal. If there's any questions that we have, we'd be happy to answer those as well. Thank you. Thank you very much, counsel. Good morning, Your Honors. May it please the Court, Patrick McMahon, representing the town of Skykomish. Initially, Justice Owens, to address your question about the pending case from the Supreme Court. Our position is, in starting out, for clarification purposes, the First Amendment retaliation claim. And first of all, let me back up just a step. My compliments to the recent graduates for doing a fine job before the panel this morning. However, a First Amendment retaliation claim has to be based on actual acts that were retaliatory, violative of someone's First Amendment rights. So although the facts you claim may be similar, there's really no evidence linking the activity we're talking about in this particular case to prohibiting or limiting his First Amendment right to speak out about what he felt about the government. And keep in mind, as Justice Wardlaw pointed out, this all occurred semi-back in 2006 when a Washington State public disclosure request was made because Burlington Northern Santa Fe Railroad had conducted a major cleanup of the town of Skykomish because railroads were going through that property, leaving a lot of oil and debris on the property. And so, Mr. Idelot certainly has a... Council, I think if you could just turn this down. But can you hear because should we get an I.T. person? No, I think I'm OK now. Oh, OK. We're getting a little feedback. That's why. Can you still hear us OK? I just want to make sure I could hear. Can you hear me right now? I can hear you right now. OK, thank you. So when those issues were raised as to whether or not the Santa Fe Railway settlement for having to relocate certain properties so that they could do this massive environmental cleanup, which was a federal requirement in addition to a state requirement, Mr. Idelot questioned what things were being done. And when Your Honor asked the question, did the lower court, the King County Superior Court, find that the prior mayor and the mayor were being manipulated or taking kickbacks? That's not the case at all. And that's a mischaracterization of the record. What happened was the court found that under a statute, the elected body, the city council, including the mayor, should not have been the ones to decide their own individual remuneration from Santa Fe for moving their property or altering their property. So they paid a legislative fine for that. But as far as the overall cleanup and that it had to have been done was not an issue in any way, shape or form. Right. But what was Mr. Idelot's, what was Mr. Idelot's role in this? Well, his role was he was a resident and he was upset that the town cleanup was taking place. And he was upset that certain officials were, what he felt, were helping Burlington Northern Santa Fe in the cleanup. And he had some strong feelings, which to this day, I'm not really clear what they are. But he asked for a public disclosure as to what sort of remuneration the property owners, who were also the elected officials, had received from Burlington Northern. And that's a perfectly legitimate request. And that was made. But to go from that in 2006, and you're correct in raising a statute of limitations issue, to say that's an ongoing pattern of behavior. Did you raise the issue? We raised the issue because it is. Did the district court rule on that question? I don't believe the district. Well, I believe the district court did rule that it did violate the statute of limitations and it wasn't an ongoing pattern of behavior. It was from Mayor Greider to the current administration. Where did it rule on that? I'm not sure I can provide you with a specific site, but. I don't remember that particular issue. I'm just thinking there's an obvious defense to it since the allegations are that it continued from that point of time. And it's difficult to see how it could be continuing when you have a whole new legislative body in place from when the federal lawsuit was filed, from when the public disclosure and King County Superior Court decision were rendered. With regard to the enforcement of the regulations about the signs, is there any indication or evidence in the record that the mayor attempted to or did enforce those regulations on other people? There isn't any in this particular record, but I don't believe it was an enforcement of the signs, other than to say some of the signs were on the property, some of the signs were not on the property. And it was simply a request that if you have signs, you need to put up or you need to pay for that particular sign. But, Your Honor, I would caution that that's an issue being raised for the first time, that somehow that sign ordinance is unconstitutional and it shouldn't be addressed at this point. I thought the claim was that the sign ordinance didn't cover his particular signs by its own words and language. And if that was a legitimate position that Mr. Idelot had, then certainly he could have brought that through the due process procedure the town has in place, bringing that up with a building inspector, pointing out with his position that these signs aren't covered, getting a ruling there. If he's dissatisfied, go to the city council, which follows his due process rights. And if dissatisfied there, that he can file a claim with King County Superior Court. In other words, he should have probably followed those procedures ahead of time. I'm sorry. It seems like you're arguing a lot of facts. Well, this should have happened. This didn't happen. I mean, I'm not trying to argue facts. I'm trying to say that under the first, I was trying to address Judge Owen's comment about waiting, that the First Amendment retaliatory claim, the elements of that are very clear. But there isn't any evidence in the record as to what specific action in enforcing that the right of way, you can't park in the street, you can't write signs in the middle of the street, enforcing those legislative police powers and suggesting you can't do those things is not a prohibition against his First Amendment right to speak out. Oh, that's why I asked about the evidence in the record suggesting enforcement with regard to other people as well, because the And so if there's evidence, for example, that enforcement is uneven and that someone was targeted with violations of codes that aren't applicable, that aren't enforced on anyone else, reading obscure regulations that's never been enforced. Those kind of things could lead to a pattern of behavior that at least would create tribal issues for trial. And that's why I was asking about whether there's evidence of even enforcement. I agree with you, Your Honor. And there is no evidence of that in the record at all. Simply the acts he's complaining of are limited to acts involving Mr. Mr. Eidelots. In other words, there wasn't any evidence that they were pulling out obscure readings of ordinances. There was simply a disagreement on a right of way boundary that you can't park your car in the middle of the street. And that is a legitimate concern. Telling someone that you can't do that is not related in any way, in any reasonable way, even under a reasonable inference. I think the claim there is that he wasn't allowed to park in a particular place. But the person across the street was allowed to park over the line. And that person happened to be related to a member of either the city council or the mayor himself. I believe those were just allegations, not any substantive backing in the record, Your Honor. Okay, that's what I thought his claim was. Well, I think his claim was he's saying that you're retaliating against me for what I'm doing, but he doesn't link it, as Your Honor's question was, to other citizens that are being treated differently. Isn't there a specific thing in the record about the person's car across the street? I'm quite certain there is. Well, if I can step back one thing. Judge Lasnik, I think, did an admirable job in trying to put together what was the operative amended complaint in this case from all of the allegations that are being made. And the facts that were ruled on by the district court, I think, are the facts that are your limit, too, in your decision. And Judge Lasnik didn't come up with anything to suggest that any of those things raise a factual question. It was just there wasn't any retaliation. I think Judge Lasnik is a wonderful judge, but, I mean, he, like all of us, could sometimes be wrong. I would respectfully submit he's not in error in this particular case, because if you look at, and the record is rather, is somewhat voluminous for a pro se plaintiff, but if you look at- No, it is voluminous, I agree, and it's remarkable that a pro se plaintiff got all this in, including photographs. Correct. And I think the point I was attempting to make, Your Honor, is that for the district court judge to ferret through all of that information to come out with, these are the causes of action, a conspiracy, a First Amendment retaliation violation, is a credit to the court. And to take that much effort and time looking at that record as extensively as the court did, he's not able to link any retaliation based on the facts that Mr. Eilat is just throwing out there to violate the First Amendment. And that's where there just is no nexus other than pure allegations that there was somehow treatment that violates his First Amendment rights. The town, and the other thing that's confusing, and it is a very confusing record, the other thing is when the fire damaged his property, there were some signs that were on that property that had to be removed. The property had to be leveled because of posing a public safety danger, public health danger. And some of those signs that were on there in those photographs were actually on the property that had to be raised. So those signs, that removal of those signs is not prohibiting or chilling his right to speak out as he sees fit under the First Amendment. It's simply those signs are gone because that property had to be leveled. And he had his due process rights to go through the process of saying whether that needed to be done or didn't need to be done. So that's where the record is very somewhat confusing. But I don't think that the appellant has shown this court any connection between the allegations and how that is a retaliatory act against any First Amendment right he has to have signs. It's just simply enforcing parking codes, enforcing a disputed right-of-way that you can't park in the middle of the street. And I don't see the connection, Your Honor, between anyone else being treated differently than Mr. Idelot. It's just him thinking this is retaliation because way back in 06, I spoke out and asked for a public disclosure request. But there's also the October 12th incident where Mr. Idelot asked Mayor Grider about his work at Burlington Railroad and was rebuffed. And then he, in May of 2013, filed a FOIA request for records of that work. I don't know if I can speak to that because I didn't see where that was related directly to the claim. He claims that Mayor Grider didn't like that and so took a did a number of these retaliatory things as a result of those inquiries. Well, he can make that allegation, but I don't see any facts that associate that with Mayor Grider's actual actions that he took. Because I think you have to point back to what actions were taken. It was a right-of-way issue. It was putting warnings on that you can't park in the middle of the street. And it was asking that a fence be removed. And if you don't remove it, the town will, under its police powers, if it's parked in the middle of the street. And the photographs that you're referring to, Your Honor, are very clear that that is a paved right-of-way. And there's a boundary dispute as to what's there. But to say that those actions, that you can't park in the middle of the street, are somehow tied to him speaking out against the government or the politicians, I think it's just too much of a leap of faith to say that it violates the Constitution. There just isn't any connection there other than the allegation. Counsel, we get a couple of these cases every year where you have, usually a man, man in town, man does not get along with the people who are in charge of the town. The people who are in charge of the town don't get along with the man. He's not going anywhere. The town is not going anywhere. I'm wondering if you would think mediation of some form in this court would be perhaps the best solution than to kind of keep, you said it's been going on since 2006, keep marching down this path. And we don't want to be back here in 2030. But I think that these cases tend to hang around for a long time. Have you thought about having mediation in this court? Your Honor, I've been practicing law for 30 years. Alternative dispute resolution is always a good alternative when there are disputes. The town of Skycoma, I don't think would be opposed to that in any way, shape, or form. The issue is when you have very active and zealous pro se plaintiffs, and that's not a criticism, Mr. Idelot, whether a mediation resolves some of these issues, which is a fine suggestion, the town would be willing to do that, whether that would be adhered to or there's another avenue that I can go down is problematic. I understand, but you're at least open to the idea? Open to the idea, sir. Okay, thank you. So in conclusion, Your Honor, I think the focus is on the First Amendment and the sign issues. And as far as the temporary restraining order, injunctive relief at this point, I think those are more or less the types of relief he wants if the summary judgment is not affirmed, which, with all due respect, it should be affirmed. But the temporary restraining order, again, was analyzed properly, that if you are not likely to prevail on your 1983 claims, you don't get injunctive relief. But if you go through the trial process, then whatever relief he's looking for could be attempted at that point. Thank you for your time. Thank you. Thank you, counsel. There are three primary points we'd like to make on rebuttal. First, in terms of the First Amendment retaliation, lacking causation that opposing counsel mentions. In this case, there is a whole set of town actions. And this court has stated in Bruce v. Yist that proximity in time supports an inference that motive was unconstitutional retaliation. And in this case, it was basically a tit for tat. Each time Mr. Adelot engaged in First Amendment speech, he was soon after retaliated against in a variety of different ways, by a variety of different employees of the town. Next, with regard to the sign issue, the sign issues were raised by Mr. Adelot. At the time, he was a pro se plaintiff, but on ER 264, 236, 146 to 147, 214 and 215, you can see that he clearly raises the issue of the sign ordinance being improperly applied against him. And again, I'd like to mention that at the time, he was a pro se plaintiff, so the court should read his allegations liberally. Next, regarding discriminatory enforcement of the signs, on ER 91 to 95, Mr. Adelot shows that his next door neighbor, directly across neighbor, Ms. Childs, is parked on her property and does not get ticketed, whereas he, when parked on his own property, and the property line, which is acknowledged by a surveyor and by a decision maker, when he is parked on what is known as his property, he becomes ticketed. So he does have, he does present evidence of unequal application of town laws. Lastly, with regard to causation for First Amendment retaliation, this court has held in Crawford L.V. Britain, Jeffers V. Gomez, and Flores V. Morgan Hill United School District, that when bringing a constitutional action against a government official, where improper motive is a necessary element, the court accepts all of plaintiff's factual allegations as true during the motion for summary judgment stage. And in this case, Mr. Adelot has clearly alleged many statements of fact regarding the improper, the evidence of improper motive. And lastly, with regards to our request for reconsideration of injunctive relief, that is completely separate from and subsumes Mr. Adelot's original request for a temporary restraining order. Again, at the time, he was a pro se plaintiff and was not asking for that, was asking for that relief additionally, but it is completely subsumed by our request for injunctive relief. Thank you. Counsel. Yes, answer Jay Joann's question. Just real quick question for you, and you may not be prepared to answer it today. But if you could consult on your team and let the court know by letter if your client would be willing to consider mediation, I would appreciate it. Yes, we'll be able to discuss that with our client. Thank you. Thank you. Thank you. I want to thank the UC Irvine School of Law and its students and Professor Hoffman for an excellent argument. And thank you to Mr. McMahon and for your willingness to participate in mediation of this lawsuit. Thank you very much. A lot versus the town of Sky Comish is submitted.
judges: Wardlaw, Nguyen, Owens